# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jehan Zeb Mir, M.D.,                        :
               Petitioner      :
                             :
            v.                   :   No. 2557 C.D. 2015
                             :   Submitted: July 8, 2016
Bureau of Professional and                  :
Occupational Affairs, State Board           :
of Medicine,                                :
               Respondent      :


BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**              **FILED:  October 31, 2016**


        Petitioner Jehan Zeb Mir, M.D. (Mir), *pro se*, petitions for review of an order of the Bureau of Professional and Occupational Affairs, State Board of Medicine (Board).  The Board adopted the decision of Hearing Examiner Suzanne Rauer (Hearing Examiner), who recommended that the Board revoke Mir's license to practice medicine and surgery as a matter of reciprocal discipline, based on similar revocations by the medical licensing authorities in the States of California and New York.  Mir raises many issues on appeal.  For the reasons set forth below, we affirm the Board's order.

## I.  BACKGROUND

        According to the Hearing Examiner's unchallenged findings of fact, which the Board adopted, Mir has been licensed to practice medicine in the Commonwealth of Pennsylvania since April 29, 1974.  He has also held medical

licenses in New York and California. On October 27, 2010, the Medical Board of California (MBC), on remand, imposed discipline on Mir in the form of a revocation of his license to practice medicine. The MBC, however, stayed that revocation in favor of placing Mir on probation, subject to terms and conditions, for a period of five years.

On or about November 3, 2011, the Executive Director of the MBC filed a Petition to Revoke Probation (Revocation Petition), claiming that Mir failed to meet the terms and conditions of his probation. Thereafter, and citing the filing of the MBC Revocation Petition (Reproduced Record (R.R.) 8), the Board commenced the instant administrative action against Mir upon an Order to Show Cause (OSC) filed on April 16, 2012. The Board sought to impose reciprocal discipline on Mir in Pennsylvania based on the discipline imposed by the MBC in California and pursuant to Section 41(4) of the Medical Practice Act (Act),[1] which provides, in relevant part:

> The board shall have authority to impose disciplinary or corrective measures on a board-regulated practitioner for any or all of the following reasons:
>
> . . .
>
> (4) Having a license or other authorization to practice the profession revoked or suspended or having other disciplinary action taken, or an application for a license or other authorization refused, revoked or suspended by a proper licensing authority of another state, territory, possession or country, or a branch of the Federal Government.

---

[1] Act of December 20, 1985, P.L. 457, *as amended*, 63 P.S. § 422.41(4).

2

In a decision dated July 17, 2012, but effective August 16, 2012, the MBC issued a default decision on the Revocation Petition, setting aside the stay of its prior discipline and revoking Mir's license to practice medicine in California (MBC Revocation Decision). (R.R. 863-78.)

On December 27, 2012, the New York State Board of Professional Medical Conduct (NYS Board) revoked Mir's license to practice medicine in the State of New York, based on the action and findings of the MBC (NYS Board Revocation).[2] Following the revocation by NYS Board, the Board filed an Amended Order to Show Cause (AOSC) on January 15, 2013, noting the MBC Revocation Decision and adding the NYS Board Revocation as an additional basis to impose reciprocal discipline on Mir in Pennsylvania. (R.R. 454-561.)

---

[2] New York's reciprocal discipline statute provides, in relevant part:

> Each of the following is professional misconduct, and any licensee found guilty of such misconduct under the procedures prescribed in section two hundred thirty of the public health law shall be subject to penalties as prescribed in section two hundred thirty-a of the public health law except that the charges may be dismissed in the interest of justice:
>
> . . .
>
> 9. . . .
>
> (b) Having been found guilty of improper professional practice or professional misconduct by a duly authorized professional disciplinary agency of another state where the conduct upon which the finding was based would, if committed in New York state, constitute professional misconduct under the laws of New York state . . . .

N.Y. Educ. Law § 6530(9)(b) (McKinney 2016).

The Board first noticed the OSC for a hearing on July 20, 2012, in Harrisburg, Pennsylvania. Mir, however, requested a continuance, which the Board granted. The Board next noticed the OSC for a hearing on October 23, 2012, in Harrisburg. Mir again requested a continuance. Mir first requested the continuance in a cover letter dated September 19, 2012, enclosing his Motion to Set Aside and Vacate Order to Show Cause (Motion to Vacate). (R.R. 385.) The only reason Mir gave in that letter for the requested continuance was to allow the Board time to consider his Motion to Vacate. On October 8, 2012, Mir filed with the Board a reply in support of his motion. In the cover letter accompanying the reply, Mir again sought a continuance of the hearing. As an additional ground for a continuance, Mir noted that he recently commenced a lawsuit against the MBC in federal court, challenging the revocation of his California license. (R.R. 406.) By Order dated October 24, 2012, the Board again granted Mir a continuance. In doing so, however, the Board noted:

> [Mir's] challenge to the [MBC's] action [in federal court] is not, however, a basis for further continuances in this matter, in that [Mir] has adequate administrative remedies in the event his appeal is successful.

(R.R. 443.) The Board rescheduled the hearing on the OSC for January 14, 2013. Again, Mir sought a continuance, this time with the concurrence of the prosecuting attorney. (R.R. 448.) On January 3, 2013, the Board granted the continuance. (R.R. 448.) In summary, Mir sought and received three continuances from the Board with respect to a hearing and adjudication of the OSC.

As noted above, following the third continuance, the Board filed the AOSC. On January 24, 2013, the Board noticed the rescheduled hearing for April 15, 2013, in Harrisburg. (R.R. 563.) Mir filed his response to the AOSC on or about February 11, 2013. On or about April 1, 2013, Mir requested a

4

continuance, citing pending litigation against the MBC and other related matters. (R.R. 583-84.) Again, the Board granted the request for a continuance, citing Mir's federal lawsuit against the MBC and Mir's California residency as part of its consideration. (R.R. 586.) The Board rescheduled the hearing for July 15, 2013, and, again, Mir requested a continuance, citing pending federal litigation against the MBC. (R.R. 588-91.) This time, however, the prosecuting attorney filed a reply in opposition to the continuance request. (R.R. 593-613.) Therein, the prosecuting attorney informed the Board that the United States District Court for the Southern District of California (District Court) issued an opinion and order on May 8, 2013, dismissing Mir's lawsuit against the MBC (and others). The prosecuting attorney attached a copy of the District Court's opinion and order to the filing.

In an order dated Friday, July 12, 2013, the Board denied Mir's request for a continuance, citing the dismissal of the federal lawsuit and the absence of any good cause shown by Mir for the continuance. (R.R. 615.) The Board convened the hearing on Monday, July 15, 2013. Mir was not in attendance. At the beginning of the hearing, the Hearing Examiner noted for the record that she attempted to transmit the order denying the continuance to Mir on Friday by fax. When that effort failed, she transmitted the order by email, using the email address on file for Mir. The Hearing Examiner noted that she received an email response from Mir, in which Mir again cited to various pending federal lawsuits in California and New York involving his license suspensions in those states. The prosecuting attorney responded by noting that none of the federal lawsuits have led to an order restoring Mir's license to practice in either jurisdiction. He also informed the court that two of the federal lawsuits—one in California and one in

5

New York—were dismissed. The prosecuting attorney did, however, agree with the portion of Mir's email, in which Mir noted that he does not currently practice in Pennsylvania and, instead, resides in California. On this basis, the prosecuting attorney agreed on the record to another continuance:

> However, I would ask for this hearing to be reconvened in a short period of time, because he's been revoked in two states. He has an active license to practice Medicine here in Pennsylvania, and the Commonwealth is concerned that he's going to move to Pennsylvania and practice medicine. So, for that reason, if another continuance is granted – if a fifth continuance is granted, I would ask for a short turnaround for this hearing to be reconvened within the next six to eight weeks if possible.

(R.R. 626.)[3] After discussing further with the prosecuting attorney the effect any pending federal litigation should have on the proceedings, the Hearing Examiner indicated that she would grant Mir another continuance of six to eight weeks and would advise Mir that this would be the last continuance in the case. (R.R. 628.) Thereafter, the Hearing Examiner issued an order, vacating her prior order denying the continuance and granting Mir's continuance request. The order provided: "**NO FURTHER CONTINUANCES WILL BE GRANTED TO RESPONDENT.**" (R.R. 618 (emphasis in original).) The Board rescheduled the hearing for September 5, 2013.

On or about August 8, 2013, Mir filed a motion, seeking the disqualification of the Hearing Examiner and removal of the hearing from the Board's calendar. On August 23, 2013, Mir wrote to the Board, again requesting a continuance. This time, he noted that a hearing was scheduled for

---

[3] According to the MBC's Revocation Decision, on or about November 22, 2011, Mir informed the MBC by letter that he intended to move to Pennsylvania. (R.R. 864.)

6

September 9, 2013, in one of his federal lawsuits against the MBC, creating a conflict with the scheduled September 5th hearing in Pennsylvania. (R.R. 711.) By separate orders dated August 26, 2013, the Hearing Examiner denied Mir's motion for disqualification and request to remove the hearing from the Board's calendar, but granted Mir's later letter motion for a continuance of the September 5, 2013 hearing. Again, the Hearing Examiner noted: "**NO FURTHER CONTINUANCES WILL BE GRANTED TO RESPONDENT.**" (R.R. 793 (emphasis in original).) The Board rescheduled the hearing for November 15, 2013.

By letter dated November 1, 2013, Mir sought a 90-day continuance, citing again pending federal litigation against the MBC. (R.R. 797-98.) Again, and despite warning Mir otherwise, the Hearing Examiner granted Mir the requested continuance. (R.R. 800.) The Board rescheduled the hearing for February 18, 2014, in Harrisburg. Again, Mir sought a continuance. In addition to pointing to his pending federal litigation against the MBC, Mir added that he was scheduled to appear for jury duty starting February 18, 2014. (R.R. 804-07.) The Hearing Examiner granted the continuance, and the Board rescheduled the hearing for May 12, 2014, in Harrisburg.

By letter dated April 24, 2014, Mir again sought a continuance from the Board on account of a scheduling conflict with pending federal litigation in California against the MBC. On May 1, 2014, the Hearing Examiner denied the request for continuance, noting: "**NO FURTHER CONTINUANCES WILL BE GRANTED TO RESPONDENT IN THIS MATTER.**" (R.R. 793 (emphasis in original).)

7

On May 2, 2014, Mir wrote to the Board, again requesting a continuance, but this time indicating that he was (again) attached for jury duty starting May 5, 2014. (R.R. 844-45.) By letter dated May 9, 2014, Mir again wrote to the Board, seeking a continuance based on his pending federal litigation in California. Mir also indicated that on May 8, 2014 (two business days before the rescheduled hearing), he retained an expert witness to testify on his behalf before the Board and that the expert required time to review the record and prepare for the hearing. Mir requested:

> I respectfully request that Prothonotary call me ahead of time for any future dates for hearings in order to assure availability of the witnesses and to prevent any conflict with any of my future court dates. That such a date should not be before 120 days, in order to allow time for witnesses to prepare.

(R.R. 848.) The Board did not formally act on these last two requests for continuances. Instead, on May 12, 2014, the Board convened the rescheduled hearing. The Hearing Examiner noted the absence of Mir. She acknowledged the Board's receipt of his two requests for continuances on May 2 and May 9, 2014. Nonetheless, the Hearing Examiner pointed to her May 1, 2014 order denying Mir's request for a continuance, particularly the portion of the order indicating that no further continuances would be provided. The Hearing Examiner proceeded with the hearing.

In support of the AOSC, the prosecuting attorney offered the following exhibits for admission into the record:

- Ex. C-1: Certified copy of the July 2012 default decision of the MBC, revoking Mir's license to practice in California;

8

- Ex. C-2: Certified copy of the December 2012 determination and order issued by the NYS Board, revoking Mir's license to practice in New York.

The Hearing Examiner admitted both exhibits, and the prosecuting attorney rested. The Hearing Examiner's adjudication and order, revoking Mir's license to practice medicine in the Commonwealth as a matter of reciprocal discipline, followed. Mir requested reconsideration, which the Board denied. Mir challenged the Hearing Examiner's decision with the Board. Ultimately, the Board rejected Mir's arguments and adopted the Hearing Examiner's adjudication and order.

## II. DISCUSSION

In his petition for review from the Board's final adjudication and order,[4] Mir raises the following issues, which we renumber and rephrase for clarity: (1) the Hearing Examiner's refusal to grant Mir a continuance of the May 12, 2014 rescheduled hearing violated his procedural due process rights under the Fourteenth Amendment to the United States Constitution, because, he claims, he established good cause for the grant of an additional continuance; (2) the Board's revocation of his license was improper under collateral estoppel principles or under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution; (3) the MBC's revocation of Mir's license to practice medicine in California is insufficient as a matter of law to support revocation of his Pennsylvania license; (4) there are mitigating factors that weigh against revocation

---

[4] Our review is limited to considering whether the Board erred as a matter of law or violated Mir's constitutional rights, and whether all necessary factual findings are supported by substantial evidence. 2 Pa. C.S. § 704.

in this case; (5) Section 41(4) of the Act is unconstitutional; and (6) the Hearing Examiner abused her discretion in refusing to recuse herself.

### A. Denial of Request(s) for Continuance of May 12, 2014 Rescheduled Hearing

Mir argues that the Hearing Examiner abused her discretion and/or violated his due process right under the Fourteenth Amendment to the United States Constitution when she denied his requests on May 2 and May 9, 2014, for a continuance of the May 12, 2014 rescheduled hearing. Mir argues that he provided "good cause" for the continuance and that, under the circumstances, the Hearing Examiner should not have entered a "default judgement" against him. He claims to have meritorious defenses to the AOSC. Mir complains that the Hearing Examiner should have granted his last continuance requests based on the pending federal litigation in California because she had previously granted him several continuances on the same grounds. Mir cites *Khan v. State Board of Auctioneer Examiners*, 842 A.2d 936 (Pa. 2004), in support. Mir also complains that the Hearing Examiner failed to consider his request(s) based on his jury duty summons and his need for extra time to prepare his expert witness.

In response, the Board notes that the Hearing Examiner granted eight continuances to Mir. Mir, therefore, received nine 9 separate hearing notices and 9 opportunities to be heard on the OSC and AOSC over a two-year period. The Board notes that in several of the continuances, the Board deferred to Mir's other commitments in California. It was under no obligation to do so a ninth time, and Mir does not explain why he could not have asked to reschedule his California commitments in deference to the Board hearing. Moreover, the Board notes that Mir could have asked to participate in hearing by telephone; he did not. He also could have retained an attorney to appear on his behalf; he did not. Under the

10

circumstances, the Board contends that Mir was afforded all of the process he was due and that the Hearing Examiner did not abuse her discretion in denying his ninth request for a continuance. The Board also pushes back on Mir's claim that the Board entered a judgment against him by "default."

We have observed that, in administrative proceedings generally, "[t]he power to grant or refuse a continuance is an inherent power of an administrative agency which is subject to review only upon a showing of abuse of discretion." *Capital Blue Cross v. Pennsylvania Ins. Dep't*, 937 A.2d 552, 585 (Pa. Cmwlth. 2007), *appeal denied sub nom. Skarloff v. Ario*, 937 A.2d 552 (Pa. 2009). An abuse of discretion occurs in the context of a request for a continuance when, in reaching such a decision, "the law is overridden or misapplied or judgment exercised is manifestly unreasonable or is the result of partiality, prejudice, bias or ill will." *Henderson v. Unemployment Comp. Bd. of Review*, 77 A.3d 699, 713 (Pa. Cmwlth. 2013).

Having extensively reviewed the procedural history in this matter, recounted above, we conclude that the Hearing Examiner did not abuse her discretion when she denied Mir's ninth (and tenth) request(s) for a continuance. The Hearing Examiner granted several continuances in this matter in an effort to accommodate Mir's California residency and conflicts with other legal proceedings in California federal courts. She was under no obligation to do so in perpetuity. As the Board notes, Mir could have elected to have an attorney represent him at the May 12, 2014 hearing, or he could have requested to participate by telephone. Throughout the proceedings, the Hearing Examiner exhibited great patience and tolerance for Mir's repeated requests; Mir, however, gave no indication that the proceeding before the Board was of sufficient character and significance for him to

11

make an effort to appear and defend against the AOSC. Given the history of Mir's requests and the Hearing Examiner's explicit warning(s) regarding any future request for a continuance, we conclude that the Hearing Examiner did not abuse her discretion in denying Mir's request(s) to continue the May 12, 2014 rescheduled hearing.[5]

The Pennsylvania Supreme Court's decision in *Khan* does not alter our conclusion. In *Khan*, the Supreme Court reviewed a decision by this Court, in which we held that the State Board of Auctioneer Examiners (SBAE) could not, as a matter of due process, impose reciprocal discipline based on a Virginia Consent Order, which included neither an admission of wrongdoing nor a finding of wrongdoing. *Khan*, 842 A.2d at 942. The SBAE had imposed reciprocal discipline on two auctioneers following a consolidated hearing, at which neither of the auctioneers appeared personally. At the hearing, however, the auctioneers' lawyers challenged the lawfulness of any reciprocal discipline given the nature and circumstances of the disciplinary actions taken against the auctioneers in the other states.

On appeal to the Supreme Court, the auctioneers attempted to challenge or minimize the impact of the disciplinary actions taken against them in the other states. They argued that the Board should have considered the merits of the alleged violations in the other states as mitigating factors when imposing reciprocal discipline. The Supreme Court, however, rejected their argument,

---

[5] Between July 20, 2012, the first scheduled hearing on the OSC, and the May 14, 2014 rescheduled hearing, Mir had ample opportunity to identify and prepare an expert witness to testify on his behalf before the Board. His decision to wait until days before the rescheduled hearing in May 2014 to do so does not constitute "good cause" for another continuance.

holding: "The [b]oard, in a reciprocal disciplinary action, *may not* consider the merits of the discipline imposed by the foreign jurisdiction, *which is the appropriate forum in which to litigate them*." *Id.* at 943 (emphasis added). To the extent a licensee wishes to avoid reciprocal discipline, the Supreme Court held that the licensee must establish any of the following: (1) that no disciplinary action was taken in another jurisdiction; (2) that the licensee has appealed the foreign disciplinary action and that appeal is pending; (3) that the foreign disciplinary proceeding was *ultra vires* or lacked the fundamentals of due process; or (4) that the misconduct that formed the basis of the foreign disciplinary action justifies different treatment in the Commonwealth. *Id.*

Mir contends that in *Khan*, the Supreme Court held that a licensing board may not hold a hearing in a reciprocal discipline case if the foreign disciplinary action is "on appeal, involved due process violations or was ultra vires." (Mir Br. at 51.) This misstates, or overstates, the Supreme Court's decision in *Khan*. The court's holding in *Khan* speaks only to what issues a licensee may raise in a reciprocal discipline case in Pennsylvania with respect to the foreign disciplinary action. It does not preclude a Pennsylvania licensing body from conducting a reciprocal disciplinary hearing where the licensee does, in fact, raise those issues. To the contrary, in *Khan*, the SBAE held a hearing and considered the auctioneers' challenges to the imposition of reciprocal discipline. In the matter now before this Court, the Hearing Examiner, therefore, did not violate the Supreme Court's decision in *Khan* when she refused to grant his request(s) for a continuance of the May 12, 2014 rescheduled hearing, because *Khan* does not preclude a Hearing Examiner from proceeding under these circumstances.

13

Like the auctioneers in *Khan*, Mir too could have appeared before the Hearing Examiner on May 12, 2014—personally or through counsel—to argue that the Board should not impose reciprocal discipline based on any one or more of the four defenses recognized by the Supreme Court in *Khan*. He did not. Moreover, we note that Mir's collateral attacks on the MBC Revocation Decision in federal courts are not the same as a pending appeal. In neither his brief on appeal nor his requests for a continuance of the May 12, 2014 rescheduled hearing does Mir contend that an appeal from the MBC Revocation Decision is pending before a California state appellate court.

Mir also asserts that the denial of his continuance request(s) violated his procedural due process rights under the Fourteenth Amendment to the United States Constitution. Due process requires that a litigant receive adequate notice and an opportunity to be heard. *Goetz v. Dep't of Envtl. Resources*, 613 A.2d 65, 67 (Pa. Cmwlth. 1992), *appeal denied*, 625 A.2d 1196 (Pa. 1993). We agree with the Board that Mir received due process. As noted above, the Hearing Examiner provided Mir with multiple continuances in an effort to accommodate Mir's other commitments in California. He received notice after notice, opportunity to be heard after opportunity to be heard, and continuance after continuance. He had ample notice of the May 12, 2014 rescheduled hearing, at which he would have had yet another opportunity to be heard with respect to any defenses to the AOSC. Mir received all of the process that he was due under the Fourteenth Amendment.

Finally, Mir's characterization of the Board's final adjudication as a "default judgment" is incorrect. In civil litigation in Pennsylvania, generally speaking, a default judgment is a device by which a plaintiff may obtain a

14

judgment in its favor simply based on the fact that the defendant has not filed a response to the plaintiff's claim. *See* Pa. R.C.P. No. 1037. Even if such relief were available before the Board, the Board did not resolve this matter against Mir by default—*i.e.*, simply because he did not appear to defend against the charges in the AOSC. Although Mir did not attend the hearing, the prosecuting attorney presented his evidence in support of the AOSC and argued in favor of reciprocal discipline. The Hearing Examiner and Board issued written decisions, including findings of facts and conclusions of law, based on the law and the evidence presented at the hearing. This was a merits decision, not a judgment by default.

## B. Collateral Estoppel and Double Jeopardy

In 2007, after the MBC first revoked Mir's medical license in California, a prosecuting attorney commenced reciprocal disciplinary proceedings before the Board against Mir with respect to his Pennsylvania license. When a California appellate court, on Mir's *appeal* from the MBC's decision, subsequently reversed and remanded the MBC's decision, the prosecuting attorney withdrew the reciprocal discipline charges against Mir before the Board. Mir claims that because the MBC's 2007 revocation and 2012 revocation are based on the same alleged misconduct by Mir, the withdrawal of the 2007 reciprocal discipline charges against Mir in Pennsylvania precludes the filing of the OSC and AOSC on collateral estoppel grounds or based on double jeopardy. Like the Board, we reject Mir's arguments.

Collateral estoppel would only apply to preclude the Board from re-litigating an issue or fact litigated in a prior proceeding that was necessary to a judgment on the merits in that prior proceeding. *J.S. v. Bethlehem Area Sch. Dist.*, 794 A.2d 936, 939 (Pa. Cmwlth. 2002), *appeal denied sub nom. J.S. ex rel. H.S. v. Bethlehem Area Sch. Dist.*, 818 A.2d 506 (Pa. 2003). In this case, although a

15

prosecuting attorney had filed an earlier order to show cause based upon a prior revocation decision of the MBC, that order to show cause was withdrawn prior to any hearing or disposition on the merits. Consequently, collateral estoppel does not apply.

The Double Jeopardy Clause also does not apply. Contrary to Mir's assertions, the revocation at issue here does not constitute a criminal sanction to which the prohibition of duplicative penal punishments would apply. *Tandon v. State Bd. of Med.*, 705 A.2d 1338, 1343 (Pa. Cmwlth. 1997), *appeal denied*, 727 A.2d 134 (Pa. 1998). Moreover, this Court has held that disciplinary action that a professional board takes to protect the public serves as a deterrent rather than punitive purpose and, therefore, does not violate the constitutional prohibition against double jeopardy. *Blair v. Bureau of Prof'l and Occupational Affairs*, *State Bd. of Nursing*, 72 A.3d 742, 750 (Pa. Cmwlth. 2013).

### C. Sufficiency of Evidence

Mir makes several challenges to the Board's decision, which we will address collectively as challenges to the sufficiency of evidence to support the Board's imposition of reciprocal discipline in this case. He raises several challenges to the merits of the MBC's Revocation Decision, including the sufficiency of the evidence to support the MBC's decision. He contends that the MBC acted unlawfully and did not follow proper procedures. Under *Khan*, we will not consider any of Mir's challenges to the merits of the MBC's decision. Moreover, as noted above, Mir did not appear before the Hearing Examiner in this matter and present evidence or argument to support his claims that the MBC acted unlawfully or violated his due process rights. Assuming, *arguendo*, that such evidence is unnecessary, neither Mir's brief nor reply brief provide a clear and

cogent legal analysis in support of the claims. We, therefore, reject them for failure to develop the record and/or for failure to adequately brief them on appeal. *See In re Condemnation of Land For the S.E. Cent. Bus. Dist. Redevelopment Area #1*, 946 A.2d 1154, 1156 (Pa. Cmwlth.), *appeal denied*, 968 A.2d 233 (Pa. 2008), *cert. denied*, 556 U.S. 1208 (2009).

The prosecuting attorney, on the other hand, met his burden before the Board. It is undisputed that both the State of New York and the State of California have revoked Mir's licenses to practice medicine. Section 41(4) of the Act authorizes the Board to act solely on the fact that Mir was disciplined by a medical board in another jurisdiction. *See Tandon*, 705 A.2d at 1345. There is, therefore, substantial record evidence to support the Board's imposition of reciprocal discipline in this matter against Mir.

Mir also contends that the misconduct that formed the basis of the MBC Revocation Decision is too remote in time to support the imposition of reciprocal discipline in Pennsylvania. Mir cites this Court's decision in *DeMarco v. State Board of Medicine*, 408 A.2d 572 (Pa. Cmwlth. 1979), in support. The Board responds that the prosecuting attorney filed the OSC and AOSC, seeking imposition of reciprocal discipline, within a reasonable period of time after the MBC and NYS Board took disciplinary action against Mir.

In *DeMarco*, the sole question before the Court was whether the Board could revoke a physician's medical license in Pennsylvania based on disciplinary action taken against the physician in a foreign jurisdiction *before* the physician began practicing in Pennsylvania, without hearing any evidence about the quality of the physician's practice in Pennsylvania. *DeMarco*, 408 A.2d at 574.

17

This Court held that it could, under the then-applicable reciprocal discipline statute:

> We can only view the Pennsylvania statute as providing in effect that, whenever a physician licensed in Pennsylvania has also obtained a medical license elsewhere, he is under a burden to remain in good standing in that other jurisdiction, and his failure to do so, at least for reasons which would warrant revocation in Pennsylvania, can justify withdrawal of his Pennsylvania license to practice

*Id.* The Court found no basis in the statute to draw a geographical or chronological distinction with respect to the Board's power to impose reciprocal discipline. In a passage relied on by Mir, however, the Court noted:

> [A]s to the chronological point, unprofessional conduct or loss of professional status before commencing practice in Pennsylvania is clearly relevant to continued qualification here, *except where such conduct or loss has been extremely remote in time*, which was not the case here. Moreover, *the conduct in question took place during the period that petitioner held a Pennsylvania license*.

*Id.* at 575 (emphasis added).

Recapping Mir's discipline in California, we note that as part of his case before the Board, the prosecuting attorney offered into evidence a certified copy of the MBC Revocation Decision. According to that decision, the MBC *first* initiated disciplinary proceedings against Mir in July 2003, when Mir was accused of unprofessional conduct in June 2000 with respect to the diagnosis and treatment of a single patient, Grace F. The MBC first resolved those charges against Mir in 2006, with a decision revoking Mir's license to practice medicine. Mir appealed that decision to the California Superior Court, which, in 2008, vacated the MBC's decision and remanded the matter to the MBC for reconsideration. Upon remand,

18

the MBC issued its October 2010 decision, in which it imposed discipline on Mir in the form of a revocation of his license to practice medicine, but stayed that revocation in favor of placing Mir on a period of probation, subject to terms and conditions, for a period of five years. When Mir failed to fulfill the terms and conditions of his probation, upon petition filed by the MBC Executive Director in November 2011, the MBC revoked Mir's license to practice medicine in California effective August 16, 2012.

There are several reasons why *DeMarco* is not helpful to Mir in this matter. Because the Court did not rule in the physician's favor on the remoteness question in *DeMarco*, the Court's reference to "extremely remote in time" conduct could be characterized as mere dicta. Even if it were not dicta, however, the Court in *DeMarco* also noted the significant fact that the alleged misconduct by the physician in that case occurred during the period of time that the physician was licensed to practice in Pennsylvania, even if he had not yet done so. Here, similarly, the professional misconduct in California that led to Mir's loss of his license to practice medicine in California (and New York) occurred while Mir was also licensed in Pennsylvania. Moreover, the MBC, acting on a complaint filed against Mir, initiated discipline proceedings against Mir 3 years and 1 month after the date of the alleged professional negligence. This is not an inordinate delay.

Both the MBC and the Board in this matter initiated and attempted to move their respective matters along in a timely fashion. Although the MBC did not revoke Mir's license to practice in California until August 16, 2012, the MBC Revocation Decision had more to do with Mir's failure to comply with the terms of his probation than it did with the underlying act of professional negligence in 2000. Within months after the MBC Executive Director filed papers with the MBC,

19

seeking to revoke Mir's license, the prosecuting attorney filed the OSC, seeking to impose reciprocal discipline with respect to Mir's Pennsylvania license. Again, based on these facts, we do not see an inordinate delay by the Board that would justify relief in Mir's favor. *See Tandon*, 705 A.2d at 1345-46 (concluding that action by Board to suspend physician license within one year of suspension by other state board was not remote in time).

### D. Mitigating Factors

Mir argues that mitigating circumstances support a less harsh sanction by the Board. Specifically, Mir again notes that the single act of professional misconduct on which the MBC based its revocation decision occurred in 2000. He also notes that since then, he has been recertified by the American Board of Thoracic Surgery and that he has earned hundreds of hours of continuing medical education credit. Mir also claims that after the MBC initially filed charges in 2003, he practiced in California for 7 years without any other complaints. He also notes that he maintained his license in Pennsylvania in good standing from 1974 to 2014.[6]

As noted above, Mir did not appear before the Board to present evidence supporting these allegations and argue in favor of a penalty short of revocation. Accordingly, he has waived any ability to challenge the Board's decision based on these alleged, but unproven, mitigating circumstances.

---

[6] Although Mir points to this alleged unblemished record in Pennsylvania, he does not indicate how much time during that 40-year span he actually practiced medicine in Pennsylvania.

20

## E. Constitutionality of Section 41(4) of the Act

Mir challenges the constitutionality of Section 41(4) of the Act, both on its face and as applied to him in this matter.[7] We reject both challenges.

This Court has consistently held that reciprocal discipline statutes, including Section 41(4) of the Act and its predecessor, are neither unreasonable nor arbitrary and fall within the scope of the state's police power. *See Tandon*, 705 A.2d at 1345; *Johnston v. State Bd. of Med. Educ. and Licensure*, 410 A.2d 103, 105 (Pa. Cmwlth. 1980); *see also Khan*, 842 A.2d at 950 ("The statutory authorization to take disciplinary action against Pennsylvania license holders on the basis of reciprocal discipline has been repeatedly upheld by the Commonwealth Court."). Mir does not present a compelling case for bypassing this precedent and holding that Section 41(4) of the Act is unconstitutional on its face.

In addition, we note that Mir's constitutional challenges, both facial and as applied, are based on the singular argument that the statute does not afford

---

[7] An as-applied constitutional challenge to a statute differs from a facial constitutional attack in that the latter asserts that a statute is unconstitutional based solely on the text of the challenged provision, whereas the former type of constitutional challenge makes no claim that a statute is unconstitutional as written, but that, when applied to an individual under circumstances particular to the challenger, the provision deprives the person of a constitutional right. *Commonwealth v. Brown*, 26 A.3d 485, 493 (Pa. Super. 2011). Our Supreme Court has described a facial challenge as one where a challenged statute is not valid under any circumstances. *DePaul v. Commonwealth*, 969 A.2d 553, 601 (Pa. 2009). In *Peake v. Commonwealth*, 132 A.3d 506 (Pa. Cmwlth. 2015), however, we referred to our Supreme Court's decision in *Clifton v. Allegheny County*, 969 A.2d 1197 (Pa. 2009), where that court applied the "plainly legitimate sweep" standard. Under that standard, a challenger claiming facial invalidity must demonstrate that a substantial number of potential applications have an unconstitutional impact. *Peake*, 132 A.3d at 517 (citing *Clifton*, 969 A.2d at 1223 n.36).

Mir the opportunity to challenge the fairness of the proceedings in the foreign jurisdiction, which we reject. The Board clearly lacks the statutory authority to impose reciprocal discipline without first affording notice and an opportunity to be heard. *See* Section 9(a) of the Act[8] ("All actions of the board shall be taken subject to the right of notice, hearing, and adjudication, and a right of appeal therefrom."). As set forth above, Mir received multiple notices and had multiple opportunities to be heard before the Board. While this proceeding was before the Hearing Office, Mir was also clearly aware of the Pennsylvania Supreme Court's decision in *Khan* and his opportunity to appear before the Board and either (a) challenge the MBC's proceedings as *ultra vires* or lacking the fundamentals of due process; or (b) argue that the misconduct that formed the basis of the MBC's disciplinary action justifies different treatment in the Commonwealth. He failed to appear and present either case. Accordingly, his claim on appeal that that statute somehow denied him that opportunity rings hollow.

### F. Recusal

Mir argues that the Hearing Examiner abused her discretion by failing to consent to his request for her to recuse herself. There is absolutely no support for Mir's claim that the Hearing Examiner acted with bias or prejudice against him. His claim to the contrary stems largely from the fact that the Hearing Examiner denied Mir's last entreaties for a continuance of the hearing. As we noted above, there was no abuse of discretion in this regard. Accordingly, we conclude that the Hearing Examiner did not abuse her discretion in denying Mir's request for recusal.

---

[8] Act of December 20, 1985, P.L. 457, *as amended*, 63 P.S. § 422.9(a).

# III. CONCLUSION

It is a strange matter, indeed, where the record on appeal is both extensive and limited. This is such a case. Despite assembling and filing with this Court a four-volume reproduced record, spanning nearly 1,500 pages, the Board's decision to impose reciprocal discipline in this case is based on two important but undisputed facts: (1) the Board presented undisputed evidence that the medical boards in both California and New York revoked Mir's privileges to practice medicine in those states; and (2) Mir did not appear before the rescheduled hearing to present evidence or argument against the imposition of reciprocal discipline in Pennsylvania. Once Mir exhausted his appeals from the MBC Revocation Decision, the Board was under no obligation to postpone indefinitely its review and decision in this case to allow Mir to sue the MBC and its members in various federal courts. The Board's decision to impose reciprocal discipline in this matter is supported by the record and comports with the Act. Mir has not identified any abuse of discretion that would warrant reversal. Accordingly, and for the reasons set forth above, we affirm the Board's order.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jehan Zeb Mir, M.D., : 
                Petitioner : 
                          :

            v. :   No. 2557 C.D. 2015
                          :

Bureau of Professional and : 
Occupational Affairs, State Board : 
of Medicine, : 
               Respondent :

## **O R D E R**

AND NOW, this 31st day of October, 2016, the order of the Bureau of Professional and Occupational Affairs, State Board of Medicine, is AFFIRMED.

 

<u>                             </u>

P. KEVIN BROBSON, Judge